A. Clifford Edwards
A. Christopher Edwards
John W. Edwards
Edwards, Frickle & Culver
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone: (406) 256-8155
Email: carol.flanagan@edwardslawfirm.org
Email: chris@edwardslawfirm.org
Email: john.edwards@edwardslawfirm.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JEFFREY H.B. ALEXANDER, deceased, by and through his personal representative STEPHANIE L. ALEXANDER, and STEPHANIE L. ALEXANDER, personal representative, on behalf of the heirs of JEFFREY H.B. ALEXANDER,<br><br>    Plaintiffs,<br><br>vs.<br><br>MDU RESOURCES GROUP, INC. D/B/A MONTANA-DAKOTA UTITILIES COMPANY, a Delaware Corporation; and JOHN DOES I-X,<br><br>    Defendants. | Cause No.<br><br>Judge<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

PLAINTIFFS, by and through their attorneys of record, Edwards, Frickle & Culver, and for their Complaint against Defendant complain and allege as follows:

## PARTIES

1. The Plaintiff, Stephanie L. Alexander, is the personal representative of the Estate of Jeffrey Alexander. Plaintiff's decedent, Jeffrey H.B. Alexander, at all relevant times, was a citizen and resident of Glasgow, Valley County, Montana. Jeffrey and Stephanie Alexander have two minor children.

2. Defendant MDU Resources Group, Inc. d/b/a Montana-Dakota Utilities Company ("MDU") is, upon information and belief, a Delaware Corporation with its principal place of business in Bismarck, North Dakota. MDU is registered with the state of Montana and is doing business and operates in Valley County, in the state of Montana.

3. The true names and capacities of John Does I-X are unknown to the Plaintiffs, who therefore sue said Defendants under these fictitious names. On information and belief, Defendants John Does I-X, inclusive, (i) directly participated in or assisted in the performance of the wrongful acts and omissions described herein, although the full extent of their involvement is unknown at this time, OR (ii) conspired with the named parties in this case to perform the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time, OR (iii) acted as principals or agents actual or ostensible, of other named

parties in this case in performing the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time, OR (iv) are responsible in some manner for the occurrences alleged in this Complaint. Plaintiffs thus believe that Defendants John Does I-X, inclusive, are liable for the damages and other relief sought in this case as participants, co-conspirators, principals or agents, or responsible parties or are otherwise necessary or indispensable parties to adjudication of the issues involved in this case. When the true names and capacities of John Does I-X, inclusive, have been ascertained, appropriate amendments of this Claim will be filed.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §1332(a) because this is a civil action between Plaintiff's decedent that was a resident and citizen of the State of Montana, and a corporation whose principal place of business is located in the State of North Dakota, where the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the Great Falls division of this Court because at all relevant times the Plaintiff's decedent was a resident and citizen of Glasgow, Valley County, Montana. The explosion, fire, and damages that form the basis of this lawsuit occurred in Glasgow, Valley County, Montana. Defendant provided natural

gas services to Plaintiff's decedent and others in Valley County, Montana, and to substantial amounts of other people and businesses throughout Montana.

## FACTS

6. Jeffrey Alexander was honorably discharged from the United States Military in April of 2014 after 12 years of service.

7. In early 2015, Jeffrey Alexander took a job with the National Oceanic and Atmospheric Administration in Glasgow, Montana.

8. In the spring of 2015, Jeffrey and Stephanie Alexander purchased a home located at 27 Meadow Court in Glasgow, Montana. In May of 2015, the Alexanders moved into the house.

9. The Alexander home located at 27 Meadow Court was supplied with natural gas from MDU.

10. MDU has supplied gas at 27 Meadow Court since at least 1970.

11. Over the years MDU checked the home and pipes when gas leak complaints were made by residents of 27 Meadow Court.

12. Correspondingly, over those same years MDU billed the residents of 27 Meadow Court for the gas they consumed. As such, MDU had at least 30 years of knowledge about the property and gas consumption on the property.

13. MDU's gas meter at 27 Meadow Court was a 275 cubic feet (CF) per hour meter.

14. MDU does, can, and did track the amount of CF flowing at 27 Meadow Court on an hourly basis.

15. In the 4 days leading up to the day of the explosion, MDU's hourly monitoring indicated the highest amount of CF of gas flowing into the Alexander house was 18 CF per hour. The vast majority of the hourly readings indicated a CF per hour flow between 0 and 2 into the house.

16. However, MDU's hourly monitoring for June 9, 2016, the day before the accident, indicates the CF of gas flowing into the Alexander home increased dramatically.

17. At 11:06 AM, on June 9, 2016, 272 CF of gas per hour was flowing into the Alexander home.

18. At this point MDU knew, or should have known, that an excessive amount of gas was flowing into the Alexander home (i.e. a gas leak).

19. In fact, for the next three hours MDU's hourly monitoring continued to show a CF per hour flow of 272, 274, and 272, respectively.

20. At 3:06 PM on June 9, 2016 MDU's hourly flow monitoring showed that 442 CF of gas per hour was flowing into the Alexander home.

21. At 4:06 PM on June 9, 2016 MDU's hourly flow monitoring showed that 630 CF of gas per hour was flowing into the Alexander home.

22. For the next 13 hours MDU's hourly flow monitoring showed that between a high of 636 and a low of 624 CF of gas was pouring into the Alexander home.

23. MDU's hourly flow monitoring showed that on June 10, 2016, between 5:06 AM and 6:06 AM, 542 CF of gas was flowing into the Alexander home.

24. The Alexander home exploded sometime between 6:00 AM and 6:30 AM in the morning on June 10, 2016.

25. At 6:47 AM MDU's hourly flow monitoring showed that 164 CF of gas was flowing into the Alexander home after the explosion.

26. As a result of the explosion, Jeffrey Alexander suffered severe burns over 90% of his body.

27. After he was stabilized in Montana, he was transferred to the University of Utah burn unit where he fought for his life until he passed on July 23, 2016.

## COUNT ONE

(Negligence)

28. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

29. MDU knows that natural gas is extremely dangerous when it is free flowing outside of contained piping.

30. MDU knows there is a high degree of danger when its natural gas is leaking outside of contained piping.

31. MDU requires that a leak which represents an existing or probable hazard to persons or property gets immediate repair or continuous action until the conditions are no longer hazardous.

32. MDU does, can, and did track the CF flow into the Alexander home on an hourly basis.

33. MDU's own records show that it could, and did, track the CF flow into the Alexander home leading up to the explosion.

34. MDU's records show that MDU could, and did, track the flow rates at the Alexander home that massively exceeded the 275 CF meter, and massively exceeded any plausible customer use, which did, or should have, established that a full-scale gas leak was occurring in the Alexander home.

35. The excess flow rates that MDU's hourly flow monitoring tracked at the Alexander home showed excessive flow rates for 19 hours leading up to the explosion.

36. As such, MDU knew, or should have known, that a massive gas leak was occurring at the Alexander home.

37. MDU had a duty to Jeffrey Alexander to use the information it had, or should have had, to shut the gas off to the Alexander home.

38. MDU breached its duty because it knew, or should have known, excessive amounts of gas were flowing into the Alexander home for 19 hours prior to the explosion and did nothing about it.

39. MDU's breach was a substantial contributing factor to the explosion.

40. As a result of MDU's actions/inactions, severe damages were suffered by Plaintiffs.

## COUNT TWO

(Failure to warn)

41. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

42. Because MDU knew, or should have known, about the excessive gas flow into the Alexander home, MDU had a duty to warn Jeffrey Alexander that there was a dangerous gas leak that represented an existing or probable hazard to persons or property.

43. MDU breached its duty by not warning Jeffrey Alexander about the significant danger to him.

44. MDU's failure to warn was a substantial contributing factor to the damages suffered by Plaintiffs.

## COUNT THREE

(Failure to properly odorize gas)

45. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

46. MDU has a duty to properly odorize its natural gas.

47. Upon information and belief, there were no reports of a gas smell in the area before the explosion despite the excessive amount of gas that had been flowing for the 19 hours prior to the explosion of the Alexander home.

48. MDU breached its duty by not ensuring that its gas was odorized properly, so it could be detected when it was excessively flowing into a residence for 19 hours.

49. MDU's failure to adequately odorize its gas was a substantial contributing factor to the damages suffered by Plaintiffs.

## COUNT FOUR

(Strict Liability)

50. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

51. MDU is, and was, in the business of distributing the ultra-hazardous material of natural gas. On and before June 10, 2016, MDU could, and did, track on an hourly basis the amount of gas flowing into the Alexander home. MDU's hourly

tracking system was in a defective condition and was defective in its design because excessive amounts of gas flowed into the Alexander home for 19 hours before it exploded. MDU's tracking system and the excessive flow of gas for 19 hours were unreasonably dangerous to the user and ultimate consumers. MDU failed to correct and warn Plaintiffs of the dangerous and defective condition of its monitoring system and danger of an explosion.

52. The defective and dangerous condition of the monitoring system and the gas distributed by MDU was a substantial contributing factor to the damages to Plaintiffs.

## COUNT FIVE

(Breach of warranty)

53. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

54. MDU both expressly and implies that its sale and delivery of gas is merchantable and reasonably fit and suitable for its general purpose and its intended and ordinary use of supplying gas to its customers.

55. Jeffrey Alexander relied on Defendant's and its agents' and employees' skill and judgment to ensure that its gas delivery was safe for normal use.

56. MDU's warranties regarding the safe sale and delivery of gas was not true, and MDU's sale and delivery of gas to the Alexander home was not suitable

and reasonably fit for its general purpose and its ordinary use as set forth in this Compliant.

57. MDU's breach of warranty was a substantial contributing factor to the damages to Plaintiffs.

## COUNT SIX

(Wrongful death)

58. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

59. MDU's acts/omissions as described in this Complaint were a substantial contributing factor in Jeffrey Alexander's horrific injuries and subsequent death.

60. Montana Code Annotated §27-1-513, creates a cause of action for wrongful death.

61. Under MCA §27-1-513, Jeffrey Alexander and his estate are entitled to damages.

## COUNT SEVEN

(Survival)

62. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

63. MDU's acts/omissions as described in this Complaint were a substantial contributing factor in Jeffrey Alexander's horrific injuries and subsequent death.

64. Jeffrey Alexander survived his injures for an appreciable length of time before he succumbed to his injuries.

65. As a consequence, Jeffrey Alexander suffered damages.

## COUNT EIGHT

(Loss of consortium)

66. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

67. Jeffrey Alexander's heirs have suffered and continue to suffer loss of consortium and are entitled to recover all damages available under Montana law as a result of the wrongful acts and/or omissions of MDU as stated in this Complaint.

## COUNT NINE

(Negligent infliction of emotional distress)

68. Plaintiffs reallege and incorporate by reference each and every paragraph listed above and further allege as follows:

69. The wrongful acts and/or omissions of MDU as described in this Complaint constitute the commission of the tort of negligent infliction of emotional distress as the cause of action is recognized under Montana law. Plaintiffs have

suffered and continue to suffer serious and severe psychological and emotional distress including, but not limited to, anger, grief, disappointment and worry, all of which have resulted in further damages and injuries to the Plaintiffs.

70. As a result of MDU's negligent acts or omissions, Plaintiffs have suffered and continue to suffer serious and/or severe emotional distress which was a reasonably foreseeable consequence of the negligent acts and/or omissions for which MDU is liable to the Plaintiffs for all damages available under Montana law.

WHEREFORE Plaintiffs pray judgment against Defendant for all damages to which they are entitled under Montana law, to include punitive damages, in such categories and in such amounts as will be furnished Defendant in accordance with applicable Montana law and/or Rules of Civil Procedure and are just and proper to their trial jury under the circumstances presented at trial.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury of all of the issues in this action.

DATED this 8th day of June, 2018.

        EDWARDS, FRICKLE & CULVER


        By  /A. Christopher Edwards
          A. Clifford Edwards
          A. Christopher Edwards
          John W. Edwards
          Attorneys for Plaintiffs