## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **JEFFREY H.B. ALEXANDER**, deceased, by and through is personal representative **STEPHANIE L. ALEXANDER,** and **STEPHANIE L. ALEXANDER**, personal representative, on behalf of the heirs of **JEFFREY H.B. ALEXANDER**, | **CV-18-82-GF-BMM** |
| Plaintiffs, | **ORDER** |
| vs. | |
| **MONTANA-DAKOTA UTILITIES CO.**, a Delaware corporation, and **JOHN DOES I-X**, | |
| Defendants, | |

## BACKGROUND

Plaintiffs Jeffrey H.B. Alexander by and through his personal representative ("Alexander") filed a lawsuit against Defendant Montana-Dakota Utilities Co. ("MDU") after Alexander's home caught fire. The fire badly burned Alexander, who ultimately died from his injuries. Alexander brought a number of claims, including claims that MDU was strictly liable for Alexander's injuries and death and that MDU breached an implied warranty of merchantability. (Doc. 1 at 9-11.) MDU asserted multiple affirmative defenses including assumption of risk and

1

state-of-the-art defenses. (Doc. 51 at 11-16.) Alexander filed this motion asking the Court to grant summary judgment in their favor on any and all of MDU's affirmative defenses asserted against the failure to warn claim in count four of their Complaint, MDU's affirmative defense that its "tracking and delivery system" related to its natural gas distribution were state-of-the-art at all relevant times, and MDU's affirmative defense of assumption of the risk. (Doc. 35.)

## LEGAL STANDARD

Alexander brings its motion under Federal Rule of Civil Procedure 56(a) ("Rule 56(a)"). Summary judgment proves appropriate where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. If the moving party satisfies that burden, summary judgment shall be granted unless the non-moving party demonstrates "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

MDU brings its motion under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Id.* A motion for judgment on the pleadings is evaluated under the same standard

2

applicable to motions to dismiss brought under Rule 12(b)(6). *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

A complaint survives a Rule 12(c) motion if it contains factual allegations that, when accepted as true, set forth a claim to relief that is "plausible on its face." *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007). A claim remains plausible on its face if the complaint pleads factual content that allows a court to draw a reasonable inference that the defendant stands liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion for judgment on the pleadings is appropriate when, taking the allegations set forth in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Johnson v. Dodson Public Schools, Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151, 1155 (D. Mont. 2006).

Courts generally refuse to resolve contested facts in evaluating a 12(c) motion. *See Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1158-1159 (9th Cir. 2015). Thus, all the non-movant's allegations, and reasonable inferences to be drawn from their allegations, are taken as true and construed in favor of the non-movant. *See Bakalian v. Cent. Bank of the Republic of Turk.*, 932 F.3d 1229, 1233 (9th Cir. 2019).

## ANALYSIS

### I.   MDU has failed to provide sufficient evidence to assert its assumption of risk defense.

Montana law limits affirmative defenses that defendants may make when facing a strict products liability claim. Though defendants cannot raise a contributory negligence defense, they may make an assumption of risk defense. *See* Mont. Code Ann. § 27-1-719(5)(a); *Lutz v. Nat'l Crane Corp.*, 884 P.2d 455, 462 (Mont. 1994). Defendants may succeed on an assumption of the risk defense if "[t]he user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it." Mont. Code Ann. § 27-1-719(5)(a). A plaintiff must have subjective knowledge of the danger and then voluntarily and unreasonably expose himself to that danger before assumption of the risk will become operative in a strict liability case. *Zahrte v. Sturm, Ruger & Co., Inc.*, 661 P.2d 17, 18 (Mont. 1983). Put another way, assumption of risk evaluates "[w]hat the victim actually knew." *Patch*, 257 P.3d at 249.

The subjective standard makes assumption of risk differ from the regular contributory negligence, which, again, Montana law prohibits in strict products liability cases. Courts evaluate contributory negligence under "the objective 'reasonable person' standard." *Lutz*, 884 P.2d at 461. Due to these different standards, a plaintiff be contributorily negligent, but nonetheless fail to satisfy the

4

elements for assumption of risk. *See id.* at 461-62. The Montana Supreme Court has recognized that allowing evidence of contributory negligence that fails to speak to subjective knowledge "undermine[s] . . . efforts to ensure that what remains at issue in products liability cases is not the *conduct* of the 'reasonable person,' but" the product itself. *Id.* at 462.

MDU's claim for assumption of risk fails to satisfy the first element of assumption of risk. MDU's claim fails because MDU conflates knowledge of danger generally with knowledge of the particular danger of these circumstances. MDU states that a "significant amount of odorized gas flowed into" Alexander's home," "the flow levels  . . . were due to a hole in the steel gas tubing," and "the hole was caused by human application of a hand-tool." (*See* Doc. 51 at 13.) All of these facts may be circumstantial evidence as to whether there existed there was an "open and obvious" gas leak or whether Alexander possessed actual knowledge of *a* gas leak, but assumption of the risk requires more. Specifically, it requires that Alexander not only knew there was a gas leak, or that the gas leak was open and obvious, but that Alexander knew of the danger stemming from the gas leak, or that the danger from the gas leak was open and obvious. As MDU acknowledges, most gas leaks "occurring in a home are small." (Schoepp Declaration, Doc. 34-3 ¶ 25.) And MDU has no evidence that even if Alexander knew of the gas leak or

even if that gas leak was open and obvious, Alexander knew the danger this particular gas leak posed to him and his health.

*Patch* illustrates the difference between danger in the general sense compared to danger specific to the incident at issue. There, the plaintiff died after having been struck in the head by a batted ball while pitching in a baseball game. *Patch*, 257 P.2d at 390. The defendant argued that plaintiff "had been hit by batted balls before, he knew he could be hit, and therefore assumed the risk when he continued playing baseball." *Id.* The Montana Supreme Court rejected this argument because the defendant offered no proof that the plaintiff knew of the particular danger posed by the specific product:

> Assumption of the risk was not applicable here because there is no evidence that Brandon actually knew he would be seriously injured or killed when pitching to a batter using one of H & B's model CB–13 aluminum bats. In other words, H & B failed to show that Brandon was aware of the enhanced risks associated with the model CB–13 aluminum bat, and, knowing that, he voluntarily proceeded to pitch to a batter using that bat.

*Id.*

MDU offers similar proof. The decedent in *Patch* knew that the bat existed, and he knew generally of the dangers of the batter hitting him with a ball. The Montana Supreme Court declined to allow assumption of risk under those general circumstances. This distinction focuses on the whole point of this litigation: even if a person sees the hole in the pipe, or accidentally caused the hole in the pipe, how

is that person supposed to tell that this particular leak would put their life in danger? How must the average person determine the difference between a life-threatening gas leak and a non-threatening gas leak? In *Patch*, how would the plaintiff know the difference between the bat that caused his death and any other type of bat? The defendant could not answer that question in *Patch*, and MDU also cannot answer those questions. MDU cannot succeed on its assumption of risk claim at this juncture. *Patch*, 257 P.2d at 390.

Alternatively, MDU fails to satisfy the second element. The second element of assumption of risk defense requires that the plaintiff unreasonably made use of the product and was injured by the unreasonable use. *Lutz*, 884 P.2d at 461. MDU fails to offer any direct or circumstantial evidence that Alexander used the gas. The Court has before it only evidence only that Alexander's home exploded. (Doc. 40-1 at 5.) No evidence exists that demonstrates that Alexander's use of the gas caused the explosion. No assumption exists that Alexander made unreasonable use of the gas because no evidence in the record reveals that Alexander used the gas. MDU fails to meet the second element of assumption of risk defense. *See Lutz*, 884 P.2d at 461.

## II.   Alexander has failed to plead a claim for breach of implied warranties.

Montana largely has adopted the Uniform Commercial Code ("UCC"). Montana Code Annotated § 30-2-316 addresses the implied warranty of

merchantability. It states that "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id*. § 30-2-316(1). Goods prove merchantable when "fit for the ordinary purpose for which such goods are used." *Winters*, 654 F. Supp. 2d at 1183; *Streich v. Hilton-Davis*, 692 P.2d 440, 448 (1984). Goods fail to prove merchantable "if in their ordinary use, the goods cause damage to the property to which they are applied or harm to the person using them." *Rothing v. Kallestad*, 159 P.3d 222, 202 (Mont. 2007).

Alexander claims to have pled adequately a claim for breach of implied warranty as related to MDU's gas. This argument fails. The complaint makes no mention of a warranty as related to MDU's gas. Alexander instead continuously discusses the "sale and delivery of gas." (Doc. 1 at 10-11.) Nothing in the complaint discusses the gas specifically or any implied warranty for the gas. To read the complaint any other way distorts its plain meaning.

Further, any claim that MDU breached its warrant as related to the sale and delivery of gas must be dismissed. Alexander made no effort in his response to the motion to dismiss to defend its breach of implied warranty claim on these grounds. "A party abandons an issue it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from

the case." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000).

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that Defendant Montana-Dakota Utilities Motion to Dismiss on the Pleadings (Doc. 28) is **GRANTED**, **IN PART**. The motion is granted such that Plaintiffs may not bring a claim for breach of implied warranty. The rest of the motion remains pending.

**IT IS FURTHER ORDERED** that Alexander's Motion for Partial Summary Judgement (Doc. 35) is **GRANTED**, **IN PART**. The motion is granted such that MDU may not proceed to trial with an assumption of risk defense. The rest of the motion remains pending.

DATED this 24th day of August, 2020

_____
Brian Morris, Chief District Judge
United States District Court