IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JEFFREY H.B. ALEXANDER, deceased, by and through his personal representative, STEPHANIE L. ALEXANDER, and STEPHANIE L. ALEXANDER, personal representative on behalf of the heirs of JEFFREY H.B. ALEXANDER,<br><br>                    Plaintiffs,<br><br>  vs.<br><br>MONTANA-DAKOTA UTILITIES CO., a Delaware corporation, and JOHN DOES 1-X,<br><br>                    Defendants. | CV-18-82-GF-BMM<br><br>ORDER |

## BACKGROUND

Plaintiff Jeffrey H.B. Alexander by and through his personal representative (collectively, "Alexander") filed this action against Defendant Montana-Dakota Utilities Co. ("MDU") after Alexander's home caught fire on June 10, 2016. The fire badly burned Alexander, who ultimately died from his injuries. Alexander alleged that the fire was fueled by significant amounts of natural gas that leaked into the home for several hours prior to the explosion. (Doc. 1). Plaintiffs asserted nine Counts against MDU encompassing a variety of legal theories. *See id.* at 6–

13. The parties agreed to the dismissal of two Counts, and the Court issued an Order dismissing those counts with prejudice. (Doc. 22). MDU since asserted multiple affirmative defenses against the remaining claims. (Doc. 51 at 11–16).

A series of motions remain pending in this case. (Docs. 27, 32, 35, 43, 45). The Court held a hearing on those motions on July 27, 2020. (Doc. 68). The Court issued an Order addressing a subset of the pending motions in part. (Doc. 69). This Order addresses the remaining motions and resolves issues pending in the partially addressed motions. A jury trial is set for January 25, 2021, at the Missouri River Federal Courthouse in Great Falls, Montana.

## ANALYSIS

### I. MDU's Motion for Judgment on the Pleadings (Doc. 27)

MDU filed a Motion for Judgment on the Pleadings (Doc. 27) alleging that Alexander's strict products liability and implied warranty claims failed as a matter of law. (Doc. 28 at 1). The Court granted the motion in part, "such that Plaintiffs may not bring a claim for breach of implied warranty," leaving the other issue pending. (Doc. 69 at 9). The Court will now address the remaining strict products liability claim.

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same

standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A complaint survives a Rule 12(c) motion if it contains factual allegations that, when accepted as true, set forth a claim to relief that is "plausible on its face." *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007).

A claim remains plausible on its face if the complaint pleads factual content that allows a court to draw a reasonable inference that the defendant stands liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion for judgment on the pleadings is appropriate when, taking the allegations set forth in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Johnson v. Dodson Public Schools, Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151, 1155 (D. Mont. 2006).

Courts do not resolve contested facts in evaluating a 12(c) motion. *See Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1158–59 (9th Cir. 2015). The non-movant's allegations and reasonable inferences to be drawn from those allegations must be construed as true and in favor of the non-movant. *See Bakalian v. Cent. Bank of the Republic of Turk.*, 932 F.3d 1229, 1233 (9th Cir. 2019).

Montana's application of strict products liability originates from the Montana Supreme Court's adoption of Restatement (Second) Torts § 402A. *See Bradenburger v. Toyota Motor Sales, U.S.A., Inc.,* 513 P.2d 268, 272 (Mont.

1973). The Montana Supreme Court justified its adoption on the need to focus strict products liability on "the character of the defect itself, that is, one occurring in the manufacturing process" and the ultimate goal of "plac[ing] liability on the party primarily responsible for the injury occurring, that is, the manufacturer of the defective product." *Id.* at 273. The Restatement's focus on the "condition of the product," rather than the conduct or knowledge of the manufacturer/seller remains central to the strict products liability analysis. *See e.g.*, *Malcom v. Evenflo Co., Inc.*, 217 P.3d 514, 521–22 (Mont. 2009); *Sternhagen v. Dow Co.*, 935 P.2d 1139, 1144 (Mont. 1997) (noting that a "core principle" of strict products liability in Montana is to protect consumers from "dangerous defects in manufactured products with the focus on the condition of the product, and not on the manufacturer's conduct or knowledge"); *Winters v. Country Home Products, Inc.*, 654 F.Supp.2d 1173, 1180 (D. Mont. 2009).

A valid strict products liability claim must include three allegations: 1) the product was sold in a defective condition that made it unreasonably dangerous (including from a lack of or inadequate warning); 2) the defect caused the injury; and 3) the defect is traceable to the defendant. *Sternhagen*, 935 P.2d at 1143; *Patch v. Hillerich & Bradsby Co.*, 257 P.3d 383, 389 (Mont. 2011). Alexander's allegations fail to make a valid products liability claim as a matter of law.

Read in its best light, Alexander's pleadings seem to allege that either MDU's tracking system or the gas itself were defective products that should be held to a strict products liability standard. (Doc. 1, 30). Both theories fail.

MDU's tracking system does not qualify as a "product" because it is not a physical good that has passed through the stream of commerce or changes hands from seller to buyer. *See* MCA § 27-1-719(2) (applying strict product liability to a person who "sells" a "product" that "reach[es] the user or consumer"); *Papp v. Rocky Mountain Oil and Minerals, Inc.*, 769 P.2d 1249, 1255 (Mont. 1989) (finding a treater facility was not a product because it did not pass through the stream of commerce); (Doc. 28 at 10 (citing a string of cases involving "products" such as marshmallows, table saws, and brush mowers)). MDU does not sell the tracking system, and the tracking system does not change possession. It cannot serve as the subject of a strict products liability claim.

The gas that MDU sells is a product. It remains unclear from the pleadings, however, how the gas itself was sold in a defective condition that made it unreasonably dangerous. Alexander's allegations relating to the dangerous condition and the failure to warn require assumptions relating to the meter readings and data collection conducted by MDU. Alexander does not allege that the gas itself was defective. (Doc. 1 at 4–6). Alexander alleges instead that MDU "had the data/knowledge of a hazardous level of gas flowing into Jeffrey Alexander's home

yet it failed to warn Jeffrey of the same." (Doc. 36 at 8–9; Doc. 1 at 5–6, 9–10). MDU's alleged knowledge and failure to warn does not constitute a defect in the gas itself that renders the gas a defective product. The quantity of the gas similarly does not represent a condition of the gas that would render it defective.

Alexander's novel theory for strict products liability fails as a matter of law. The proper claim for this dispute can be found in principles of negligence law. The issues relating to data, knowledge, and warning would determine whether MDU exercised reasonable care. These issues do not relate to any defective product, and instead center on the conduct of the seller—exactly the allegation that arises from Alexander's well-pleaded complaint. The Court will grant the remainder of MDU's motion and set aside Alexander's strict products liability claim because it fails as a matter of law. *Papp*, 769 P.2d at 1255.

## II. MDU's Motion for Summary Judgment (Doc. 32)

MDU filed a Motion for Summary Judgment arguing the Court should set aside Counts I, II, III, VI, and VII. (Doc. 33). A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In Counts I, II, and III, Alexander makes related allegations for negligence, failure to warn, and failure to odorize the gas. Alexander argues that MDU was

negligent because it possessed constructive knowledge of the gas leak and had a duty to warn or take action to ensure the safety of Alexander. (Docs. 1, 48). Significant facts remain in dispute relating to these claims. These disputed facts include at least the following matters: 1) the duty of a reasonable natural gas provider; 2) evidence of alarm and warning systems; 3) evidence of the state-of-the-art in gas monitoring and delivery; 4) whether MDU had constructive knowledge of the leak; 5) the cause of the leak; 6) the cause of Alexander's injuries; and 7) the potential effect of an adequate warning or response. (Doc. 1 at 4–9; Doc. 33 at 5 – 21; Doc 48 at 7–24). Conflicting evidence also exists regarding whether MDU properly had odorized the gas. (Doc. 33 at 17–18; Doc. 48 at 24). The existence of these material facts in dispute precludes summary judgment for MDU on Counts I, II, and III.

Counts VI and VII similarly survive summary judgment because they rely on the negligence claims. Wrongful death and survival represent valid theories of recovery based on negligence. As described above, Alexander's negligence claims survive summary judgment because material facts remain in dispute. The Court will deny MDU's motion in full.

**III.** **Alexander's Motion for Summary Judgment (Doc. 35)**

Alexander filed a Motion for Summary Judgment (Doc. 35) alleging that undisputed facts preclude certain affirmative defenses from MDU. (Doc. 36 at 1–

2). The Court granted the motion in part, "such that MDU may not proceed to trial with an assumption of risk defense," leaving the remaining issues pending. (Doc. 69 at 9). The Court will now address the remaining strict products liability affirmative defense claims.

As described above, the Court will grant MDU's Motion to Rule on the Pleadings and dismiss Alexander's strict products liability claims. (Doc. 27). This result renders moot any affirmative defenses to strict products liability claims. The Court will deny the remainder of this motion as moot because it applies only to the strict products liability claims.

## IV. MDU's Motion in Limine (Doc. 43)

MDU filed this motion seeking to exclude the testimony of Alexander's expert witness Pamela Dalton. (Doc. 44 at 4). Trial courts retain discretion over the admissibility of expert testimony. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997) (citing Fed. R. Evid. 702). Rule 702 imposes a "gatekeeping" requirement on trial courts to ensure that expert testimony is relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). A court's Rule 702 inquiry is flexible. *Id.* at 594.

A court permits an expert witness "wide latitude" to offer opinions, so long as the opinion has a reliable basis in the knowledge and experience of the expert's discipline. *Id.* at 592. A court's responsibility as gatekeeper should not replace the

adversary system or the jury's role in assigning weight, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Defendants do not challenge Dalton's qualifications or expertise in her respective field. (Doc. 44 at 5). Defendants instead seek wholesale exclusion of Dalton's proposed testimony under Rule 702's relevancy and reliability requirements.

Dalton's expert testimony proves relevant because it sufficiently relates to the facts of the case and may be useful to the trier of fact to resolve a factual dispute regarding the odorization of the gas. *See Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702(a)); *W.R. Grace*, 455 F. Supp. 2d at 1187. This testimony will be useful for a jury tasked with weighing the evidence presented at trial. It meets the low bar for relevance. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) ("The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'") (quoting *Daubert v. Merrell Dow Pharm., Inc. ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995)).

Dalton's expert testimony is also reliable because it meets the requirements set out in *Daubert*. A trial court can consider at least four factors in its discretion when assessing the reliability of expert testimony: 1) whether a theory or technique

9

can be tested; 2) whether the theory or technique has undergone peer review and publication; 3) the theory or technique's known or potential error rate; and 4) whether the theory or technique is generally accepted within the relevant scientific community. *See United States v. W.R. Grace*, 455 F. Supp. 2d 1181, 1187 (D. Mont. 2006) (citing *Daubert*, 509 U.S. at 593–94). Expert scientific testimony generally can be excluded if there exists "too great an analytical gap between the data and the opinion offered." *Johnson v. Am. Honda Motor Co., Inc.*, 923 F. Supp. 2d 1269, 1275 (D. Mont. 2013) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The Court declines to exclude Dalton's expert testimony based on the four *Daubert* considerations. Dalton's expert report recites factors that contribute to her conclusion on the human olfactory system response to odorants added to a natural gas stream. (Doc. 44-1 at 4). Those factors include odorant transport; variation in sensitivity; olfactory adaptation; and attention. *Id.* Dalton's testimony explains the science of olfactory perception, and the factors that might affect an individual's ability to detect odorants in natural gas. MDU admits that Dalton based her testimony on these factors on reliable principles and methodology. (Doc. 44 at 13).

Dalton's report draws assumptions as to how the factors could have influenced Alexander's senses in the present case, but these inferences do not represent mere suppositions. As applied to the factors, Dalton permissibly bases

10

her assumptions on facts drawn from the record. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. . . . However, mere 'weaknesses in the factual basis of an expert witness'[s] opinion . . . bear on the weight of the evidence rather than on its admissibility.'" (internal citations omitted)). A clear link exists between the facts in the record and the opinions proffered by Dalton where she bases those opinions on application to the stated scientific factors.

The Court cautions, however, that Dalton's testimony will be permitted only to the extent that it relates to potential scientific explanations as to why Alexander, neighbors, or the Fire Marshall in this case did not report noticing the odor of natural gas. The Court will not allow any conclusions drawn by Dalton that invade the province of the jury. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). The Court defers ruling on the admissibility of any such conclusory statements until trial. These potentially impermissible conclusions include Dalton's statements that "Mr. Alexander did not detect the gas leak via warning odors, as he was unaware of the problem until the time of the explosion," and that "[Mr. Alexander] did not perceive any olfactory cues from the gas leak[.]" (Doc. 44-1 at 2, 9). The Court advises both Parties to avoid introduction of opinions that relay a result that the jury should reach from the evidence presented. *See Diaz*, 876 F.3d at

1199. The jury should draw such conclusions based on the credibility and weight that it assigns to the evidence.

## V. Alexander's Motion in Limine (Doc. 45)

Alexander filed this motion seeking to exclude MDU's introduction of eight categories of evidence: 1) testimony and rebuttal testimony of MDU's expert witnesses outside the scope of their disclosures; 2) any "state of the art" evidence; 3) expert testimony from Steve Arndt; 4) expert testimony of Dennis Shelp and John Erickson; 5) expert testimony that would constitute a legal conclusion; 6) evidence of Plaintiffs' received "collateral source benefits"; 7) evidence suggesting Alexander was estranged from his family at the time of his death; and 8) evidence suggesting Alexander was suicidal at the time of his death. (Doc. 46 at 4–22).

### a. Testimony and rebuttal testimony of MDU's expert witnesses outside the scope of their disclosures

Fed. R. Civ. P. 26(a)(2)(B) provides, in relevant part, that an expert witness disclosure "must be accompanied by a written report—prepared and signed by the witness." Fed. R. Civ. P. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

Alexander asks the Court to limit Defendants' expert witness testimony to its disclosures as provided in Fed. R. Civ. P. 26 and 37. The Court must follow these

12

rules at trial unless a party's failure to disclose a witness or information "was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Alexander fails to identify any evidence, however, that MDU seeks to introduce that would fall outside the bounds of this rule. The Court will deny without prejudice this portion of Alexander's motion. The Court may revisit the matter where a disclosure issue has arisen at trial and the offering party has had an opportunity to explain any disclosure deficiencies.

### b. Any "state of the art" evidence

Montana does not permit the admission of state-of-the-art evidence in strict liability products liability cases. *Sternhagen v. Dow Co.*, 282 Mont. 168, 173 (1997). This exclusion seeks to focus attention on the condition of the product rather than the manufacturer's conduct or knowledge. *Id.* No such exclusionary rule exists for state-of-the-art evidence in a negligence case. The state-of-the-art defense "raises issues of reasonableness and foreseeability—concepts fundamental to negligence law—to determine a manufacturer's liability." *Id.* As described above, the Court will grant judgment on the pleadings to dismiss the strict liability claims, thereby leaving negligence claims where state-of-the-art evidence could be admitted. The Court will deny this part of Alexander's motion.

### c. Expert Testimony of Steve Arndt

Alexander seeks the exclusion of expert testimony from Steve Arndt, a human factors expert. (Doc. 46 at 7–12). Trial courts retain discretion over the admissibility of expert testimony. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997) (citing Fed. R. Evid. 702). Rule 702 imposes a "gatekeeping" requirement on trial courts to ensure that expert testimony is relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). The court's Rule 702 inquiry is flexible. *Id*. at 594. A court permits an expert witness "wide latitude" to offer opinions, so long as the opinion has a reliable basis in the knowledge and experience of the expert's discipline. *Id.* at 592. A court's responsibility as gatekeeper should not replace the adversary system or the jury's role in assigning weight, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

The Court previously discussed the standard for excluding expert testimony in regard to MDU's motion to exclude Pamela Dalton. *See supra* 8–12. Arndt's expert testimony meets the requirements set out in *Daubert*. Arndt's expert testimony is supported by peer reviewed literature and studies in its citations as well as in the "Reference" section of the report. (Doc. 53-2 at 3, 14). Arndt further supported his findings through his extensive experience in human factors. *See id.* at

19–23. Arndt's knowledge and experience, as well as his review of related literature and the facts of the case, make him a reliable expert. The Court will deny this part of Alexander's motion.

### d. Expert Testimony of Dennis Shelp and John Erickson

Alexander seeks the exclusion of "speculative" and "irrelevant" expert testimony by Dennis Shelp and John Erickson as to the potential human cause of the leak and ensuing explosion. (Doc. 46 at 12–14). This testimony would be admissible because the witnesses provide information that may be useful relating to the issue of causation. Relevance presents a low bar. *See Messick*, 747 F.3d at 1196 ("The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'") (quoting *Daubert II*, 43 F.3d at 1315). Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Ev. 401. Expert testimony regarding the potential cause of the gas leak would provide the jury with useful information in determining causation. The testimony also would be relevant. The proposed expert testimony would not be speculative because it is based on scientific and technical expertise and the application of those principles to the facts and evidence. (Doc. 53 (citing relevant exhibits)). The Court will deny this part of Alexander's motion.

### e. Expert testimony that would constitute a legal conclusion

Alexander seeks the exclusion of expert testimony that would constitute a legal conclusion. (Doc. 46 at 14–18). Alexander identifies a variety of specific statements made by three of MDU's experts as potential legal conclusions. *See id.* These experts certainly opine using terms that have legal significance. The experts do not make legal conclusions, however, simply through the use of such terms. In their proper context the statements do not constitute legal conclusions, but rather involve uses of those terms in their common understanding.

The Court cautions again that it will not allow any conclusions drawn by experts that seeks to invade the province of the jury. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). Some statements—John Erickson's in particular—come close to the line of impermissible legal conclusion. The Court advises the parties to avoid introduction of opinions that relay a result the jury should reach from the evidence presented. The jury should draw such conclusions based on the credibility and weight it assigns to the evidence. The Court will deny without prejudice this part of Alexander's motion. Alexander remains free to raise the issue at trial when the Court will have the benefit of reviewing the proposed evidence in context.

### f. Evidence of Plaintiffs' "collateral source benefits"

Alexander seeks the exclusion of evidence of "collateral source benefits" under Montana law. (Doc. 46 at 25 (citing MCA § 27-1-307)). Alexander raises a valid rule. Alexander fails to identify any evidence, however, that MDU seeks to introduce that should be excluded. MDU represents that they do not plan to introduce evidence of collateral source benefits. (Doc. 53 at 19). The Court will deny without prejudice this blanket motion. Alexander may raise this motion again at trial if MDU seeks to introduce specific evidence identified as collateral source benefits under Montana law.

### g. Evidence suggesting Alexander was estranged from his family at the time of his death

Alexander seeks the exclusion of evidence suggesting that Alexander was estranged from his family at the time of his death. (Doc. 46 at 19–21). Alexander argues that such evidence would be unfairly prejudicial. *See id.* at 19. A court must exclude evidence when its prejudice substantially outweighs its probative value. Fed. R. Ev. 403. Evidence of estrangement does not meet that bar. Estrange means "to remove or keep at a distance esp. from customary environment or associations" such as family. Websters Third New International Dictionary Unabridged (1976). The word and the factual circumstance are not prejudicial to a degree that would require exclusion. Alexander remains free to offer testimony providing background

for family circumstances as they find necessary. The Court will deny this part of Alexander's motion.

### h. Evidence suggesting Alexander was suicidal at the time of his death

Alexander finally seeks to exclude as highly prejudicial evidence suggesting Alexander was suicidal. (Doc. 46 at 29). The Court interprets this motion to mean any evidence that Alexander suffered from suicidal ideation or previously desired to end his own life. MDU avers they have no such evidence and do not plan to make such an argument. (Doc. 53 at 21). The Court will deny without prejudice this part of Alexander's motion. Alexander may raise this motion again at trial if MDU seeks to introduce specific evidence of suicidality that they believe would be inadmissible.

## ORDER

Accordingly, **IT IS HEREBY ORDERED:**

- MDU's Motion to Rule on the Pleadings (Doc. 27) is **GRANTED** with regard to the remaining issues relating to dismissal of Count IV;

- MDU's Motion for Summary Judgment (Doc. 32) is **DENIED**;

- Alexander's Motion for Partial Summary Judgment (Doc. 35) is **DENIED** as moot with regard to the remaining issues relating to Count IV;

- MDU's Motion in Limine (Doc. 43) is **DENIED**;

- Alexander's Motion in Limine (Doc. 45) is **DENIED** with regard to issues (2), (3), (4), and (7); and **DENIED WITHOUT PREJUDICE** with regard to issues (1), (5), (6), and (8).

Dated the 23rd day of October, 2020.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court